1    IN THE UNITED STATES DISTRICT COURT FOR THE

2             NORTHERN DISTRICT OF TEXAS
                   DALLAS DIVISION
3
UNITED STATES OF AMERICA,        )
4                                )
                                 )
5                 Plaintiff,     )
vs.                              )Case No. 3:06-CR-350-P
6                                )
KENDRIX T. RAY,                  )
7                                )
                  Defendant.     )
8    _____

9        REPORTER'S TRANSCRIPT OF PROCEEDINGS

10      HAD ON WEDNESDAY, DECEMBER 1, 2010

11                   SENTENCING

12   BEFORE THE HONORABLE JORGE A. SOLIS, JUDGE PRESIDING

13           **A P P E A R A N C E S**

14   MR. JAY DEWALD
U.S.  Attorney's Office
15   Department of Justice
1100 Commerce Street
16   Third Floor
Dallas, TX 75242-1699
17   jay.dewald@usdoj.gov
(214)659-8600
18
COUNSEL FOR THE GOVERNMENT
19
MR. R. KELLY PACE
20   Law Offices of R. Kelly Pace
435 S. Bois D'Arc
21   Tyler, TX 75702
pacekelly@hotmail.com
22   (903)5266-6777

23   COUNSEL FOR THE DEFENDANT KENDRIX T. RAY

24

25

```
 1                  I     N     D     E     X
 2                                          VOLUME    PAGE
 3    COURT'S RULING                           I        31
 4    REPORTER'S CERTIFICATE                   I        39
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1            (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN

2   COURT, WITH ALL PARTIES AND COUNSEL PRESENT.)

3            THE COURT: United States versus Kendrix T. Ray.

4   Mr. Dewald, are you ready to proceed?

5            MR. DEWALD:  Yes, Your Honor.

6            THE COURT: Mr. Pace, are you ready to proceed?

7            MR. PACE: Yes, Your Honor.

8            THE COURT:  You are Kendrix T. Ray?

9            THE DEFENDANT:  Yes, sir.

10            THE COURT: You appeared in Court back on May 6,

11   2009 and entered a plea of guilty to Count 1 of a second

12   superseding indictment that accused you of possession

13   with intent to distribute and distribution of controlled

14   substances, specifically, in excess of five kilograms of

15   cocaine.  We are now here on sentencing hearing.

16       The probation office has prepared a pre-sentence

17   report, an addendum and also a second addendum to the

18   pre-sentence report in response to some objections by

19   your attorney.  And have you had the opportunity to

20   review these reports with Mr. Pace, your attorney?

21            MR. DEWALD:  Your Honor, if I might there is

22   also a third addendum to this PSR.

23            THE COURT: Yes, I don't think I have received

24   that.  Ms. Morris I spoke with you and it was on the

25   way.  I am yet to see it.  I have been told what is in

1  it.  Do you have an extra copy of it?

2          THE PROBATION OFFICER:  Yes, Your Honor.

3          MR. DEWALD:  We received it Monday afternoon,

4  Your Honor.

5          THE COURT:  It subtracts two criminal history

6  points because of that recent change.

7          MR. DEWALD:  It is just one because he only had

8  one added for recency; is that correct?

9          THE PROBATION OFFICER:  Yes, that is correct.

10          THE COURT: On here you have two in the addendum,

11  but you only added one; you subtracted one.

12          THE PROBATION OFFICER:  Yes, Your Honor, it

13  should just be one.

14          THE COURT: One criminal.  You 76 -- 75 is still

15  in there.

16          THE PROBATION OFFICER:  Correct.

17          THE COURT: My mistake.  And Mr. Ray, have you

18  had an opportunity to review all of the filings your

19  attorney Mr. Pace?

20          THE DEFENDANT RAY: Yes, sir.

21          THE COURT: Do you understand all of the

22  information contained in there?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT: Mr. Pace, have you explained and been

25  over this with your client?

1      MR. PACE: Yes, sir.

2      THE COURT: You filed a number of objections.

3  You filed a motion for a sentence outside the guideline

4  range.  You have several letters which I have read.  I

5  viewed reviewed those, and we will come back to the

6  objections in a minute.  Mr. Dewald, you have no

7  objections to the pre-sentence report.

8      MR. DEWALD:  The government had none.

9      THE COURT: And let's take up your objections,

10 Mr. Pace.

11     MR. PACE: Your Honor, I have put almost

12 everything I have in writing, and I know that you have

13 read it and I think that is pretty exhaustive, so I will

14 try to be as brief as I can.  The first objection we have

15 regarding the drug quantity, I do not dispute the

16 CS No. 1 whom I believe to be Mr. Tony, and CS No. 2 whom

17 I believe to be Mr. Williams said in their debriefs with

18 the probation said they said and I don't want to get into

19 a situation I told Mr. Dewald that was not the

20 issue.  The issue that I found to have problems with is

21 on its face a lot of the information they gave about the

22 activity of Mr. Ray occurred while he was incarcerated,

23 and therefore, I believe it is not credible

24 information.

25     The part of the information that I do believe is

1 credible is the part for Mr. Williams regarding the drugs

2 that were dealt by Mr. Ray with him while he was out of

3 prison after October of 05 through 06 which is basically

4 when this stopped, and this is where we got our

5 computations of half of the amounts would be attributable

6 to Mr. Ray which would be ten kilos, and we have the four

7 kilos which was the subject of the indictment or the 14

8 kilos, and that is our position that it should be level

9 32.

10        THE COURT: Thank you.  Mr. Dewald, any

11 response?

12        MR. DEWALD:  Your Honor, the U.S. probation

13 officer in the addendum addressed this objection

14 sufficiently, and so I will go ahead and stand by that

15 because I have spoken with my Agent Jason Ford who is

16 here today and the CI No. 1 and CI No. 2 did indeed

17 corroborate each other and the amounts that have been

18 attributed to Mr. Ray are conservative amounts.  These

19 amounts could have been higher, but these are

20 conservative amounts.  They are corroborated and on the

21 face of the reports and in the U.S. probation officer's

22 investigation of this, the proper amount was 28 kilos as

23 opposed to the 14 that Mr. Pace stated.

24        THE COURT: When you consider the jointly

25 undertaken activities?

1    MR. DEWALD:  Yes, Your Honor.

2    THE COURT: 14 each.

3    MR. DEWALD:  Yes, sir.

4    THE COURT:  That is where the government

5    stands.  The PSR has and the investigation underlying

6    that show sufficient indicia of reliability for this

7    Court to rely upon that and make that finding.  Mr. Pace,

8    anything else?

9    MR. PACE: Your Honor, only to refer you back to

10   the things that were in the original objections about

11   erring on the side of caution and specificity and things

12   required and things of that nature.

13   THE COURT: I will overrule that objection.  I

14   think the probation officer was careful in noting that

15   Mr. Ray was in prison part of 04 and most of 05, and so

16   in 05 after he got out of prison in 06 primarily and

17   that's where the amounts come from.  I think your

18   calculation omits even if you went 12, the 25 was

19   intercepted in Houston and they attributed that to

20   Mr. Ray, so that is where you get your 14.  What your

21   argument also omits, Counsel, is that this joint activity

22   is clearly joint activity between Mr. Ray and

23   Mr. Williams, and so if you add any of that in, he is

24   over the 15 kilogram threshold which gets him to level

25   34.

1    I think the probation officer correctly calculated

2  the report, and he is responsible for over 15 kilograms

3  of cocaine when you take into the relevant conduct under

4  1B1.3.  That objection is overruled.  I will hear your

5  next objection.

6            MR. PACE: Your Honor, the next objection was

7  regarding paragraphs 44 through 47 of the pre-sentence

8  report regarding information that was supplied by Mr. Ray

9  during debrief.  I agree that the information was not

10 used in calculation a base level of the offense.

11 However, I think under 1B1.85 use of the information is

12 prohibited.  Mr. Ray was informed by me that the

13 information would not be used.  I think the probation

14 officer is probably correct.  He would like no problem

15 with the Court having it.  He doesn't want to other

16 people who are going to be reading the pre-sentence

17 report and it might get out and damage him.  That is the

18 reason we are asking to have it removed.

19            THE COURT: I think under the guidelines it is

20 not supposed to be used for calculation of the

21 guidelines, so sentencing the memorandum -- I think

22 probation correctly utilized that information and didn't

23 use it in calculating the guidelines.  That is

24 information that is supposed to be transmitted to the

25 Court, and that is the way they transmitted it.  This PSR

1  is not public information and prison officials will see

2  it.  It is not public information.  I think that is

3  proper and will overrule that objection.

4          MR. PACE: Your Honor, I would like to address

5  objections number 3 and 5 together, number 3 regards the

6  criminal history and the consolidations.  Number 5 is

7  which guidelines manual are we to use.  I also have an

8  alternative that if the Court overrules the objection

9  regarding whether the criminal history category is

10  overstated, but we will take that up in the sentencing

11  memorandum.  I think it is clear, and I do disagree with

12  probation, if you use the November 07, I think in that

13  particular situation, even if there were separate offense

14  dates if the offenses were consolidated for sentencing

15  back then, they didn't receive individual criminal

16  history points, and there should be criminal history

17  points removed, accepted in there and requested in there.

18      The reasons that I am asking that and --

19          THE COURT:  Which manual are you looking at?

20          MR. PACE: November 07, Your Honor.

21          THE COURT:  Okay.

22          MR. PACE: 4A1.2.

23          THE COURT: 1.2.

24          MR. PACE: I have under application note 3 prior

25  offenses should be consolidated for trial or sentencing

1   should be treated as related; accordingly, the cases are
2   consolidated for trial or sentencing for the Court to
3   consider.  However, the fact the Defendant was sentenced
4   for two crimes on the same date does not suffice to
5   demonstrate consolidation.  You actually have to have
6   some record or some sort of order which is what I went
7   and obtained.  Without those orders that even a
8   concurrent sentence is not going to be consolidated with
9   those others.  The reason I say we should use that is, I
10  understand that my factual resume said that this
11  conspiracy which he pled guilty to ended November 8th of
12  2007, and that would put us into the next guideline
13  book.  I understand that, but I also understand that
14  factually speaking that his actual and real termination
15  of the conspiracy was in October.
16          THE COURT: Of 06.
17          MR. PACE: Of 06 which would put him into the 07
18  and make the consolidation important in reducing the
19  criminal history.
20          THE COURT: Mr. Dewald?
21          MR. DEWALD:  On this point, with all due
22  respect, these consolidations are sort of after-the-fact
23  manipulation of criminal history.  These were not
24  consolidated at the state court level.  In fact, they are
25  separated by intervening arrests which is the salient

1    point in analyzing these issues.  Paragraphs 66 through

2    67, paragraphs 71 through 72, all of those have

3    intervening arrests, and thus they are correctly counted

4    as separate convictions and correctly tallied under the

5    Defendant's criminal history score.

6         Furthermore, with respect to the probation officer's

7    response concerning the application of the 2006

8    guidelines, the probation officer accurately states what

9    the analysis is.  The factual resume does indeed support

10   that the conspiracy continued through the date of 2007,

11   November 8, 2007, and thus the proper use of the

12   Sentencing Guidelines actually should be and as we have

13   been corrected with the third addendum the 2010

14   Guidelines.

15        So all of that in mind, the criminal history score

16   for Mr. Ray has been accurately counted.  In fact, the

17   probation office conceded one of the Defendant's points

18   on one of the criminal history priors that it was too old

19   to be taken into account, so he was credited a point for

20   that.  So this has been fairly actively exhausted by the

21   probation officer, and the government stands by that.

22             THE COURT: Mr. Pace, anything else?

23             MR. PACE: No, sir.

24             THE COURT: I think we are using the appropriate

25   manual.  I don't think the 07 is necessarily the proper

1  one.  You are arguing 06 because we appear to be using

2  the 10 manual now because he received credit for that one

3  point for recency was omitted, but the 10, the 06, you

4  read part of it right about prior sentences considered

5  later if they were consolidated for trial, but the

6  sentence before that prior sentences are not considered

7  related if they were for offenses that were separated by

8  an intervening arrest, otherwise prior sentences that are

9  consolidated for trial are considered related.

10     So it starts off by saying that offenses that were

11  separated by intervening arrests are not considered

12  related offenses.  These offenses were clearly separated

13  by intervening arrests, so I don't believe they are

14  separate offenses as the guidelines specifically call

15  for.  I think the probation office clearly treated them

16  that way.  That objection is also overruled.

17          MR. PACE: Your Honor, I think objection number 4

18  is the most important one to Mr. Ray and that regards --

19          THE COURT: One other objection you had with

20  respect to criminal history category, and that is the

21  uncounseled conviction that was miscounted.

22          MR. PACE: I supplied you the actual plea

23  document, and I think the burden is on me to prove that

24  it was actually uncounseled, even though there is not a

25  lawyer listed.  The document said he signed a jury waiver

1   and everything else, but the portion of the document at

2   the top where he waives Counsel is dated but not signed,

3   and so I think I carry the burden on that particular

4   point to show that was an uncounseled conviction, that

5   there was not a proper waiver.

6           THE COURT: Mr. Dewald?

7           MR. DEWALD: Again, the probation officer's

8   response in the PSR addendum properly addresses this, and

9   in thinking about this, it is hard to believe that a

10  defendant would be credited for refusing to sign a

11  signature block on a plea paper where he actually signed

12  an all encompassing signature block acknowledging advice

13  of counsel in that same conviction, so that is to me the

14  probation office has accurately addressed that, but still

15  further assuming that that is indeed overruled, it really

16  doesn't change his criminal history category.

17          THE COURT:  Anything else on that?

18          MR. PACE: No, sir.

19          THE COURT: Actually, I have a problem with that

20  one.  I understand the argument that it is signed at the

21  bottom, but the specific waiver of counsel is not

22  signed.  There is an "X" there for him to

23  sign.  The document states he is without counsel.  I

24  think the government and the Court are under an

25  obligation to make sure that those waivers are properly

1    executed.

2       I really can't tell from here that the waiver was

3    properly executed.  I think that is a valid objection.  I

4    will sustain the objection.  That subtracts two points.

5    We are still at criminal history level VI because we are

6    15 rather than 17 points, but I think that is a valid

7    objection, so I will sustain that objection to counting

8    that particular conviction.  And I think that takes care

9    of the criminal history category.

10          MR. PACE: Yes, sir.

11          THE COURT:  Move on to the denial of acceptance.

12          MR. PACE: Your Honor, I think this is probably

13   the most important of all the objections that we filed.

14   I understand that this was originally put down as an

15   escape kind of situation, and I pointed out that that was

16   certainly not the facts of the case.  And in the addendum

17   the probation officer said technically you are correct,

18   it wasn't an escape.  It was evading.  I am not saying he

19   didn't walk off.  On that particular date of the arrest

20   of Mr. Williams and the attempted arrest of Mr. Ray, the

21   indictment had not been unsealed as to either one of

22   them, so I don't know that either one of them know what

23   they were being stopped for.  At that particular time

24   there was a warrant out of Tyler which I have that

25   Mr. Ray was aware of, so I think that the way that this

1  got started on denial of acceptance looked like he

2  escaped and, in fact, that is not the circumstances.

3     So now we are down to, is the Court going to say that

4  he has got a duty to voluntarily surrender himself in

5  order to get acceptance or to avoid the denial of

6  acceptance.  And there are eight different factors in

7  3B1.1 that are supposed to be considered, and I think the

8  most important factor is when you come before the Court,

9  do you timely accept responsibility; do you timely enter

10 your plea; do you timely enter into a factual resume, and

11 do you timely do a debrief.  All of which things happened

12 in here.

13    He has accepted responsibility by demonstrating

14 those things to the Court.  He has also further accepted

15 responsibility in the pre-sentence report, and he has

16 further accepted responsibility in the letter that he

17 wrote to you that I am sure you read that is contained in

18 the sentencing memorandum.

19    I also think that the case law basically has timely

20 entering the plea is significant evidence is the term

21 that I used for acceptance of responsibility.  That is

22 the one I see all the time and timeliness of the entered

23 plea is of paramount importance.  Those are the two

24 phrases that I usually see and those are the two phrases

25 we see in the case law.  If you take all of it together,

1 I think he should be entitled to acceptance of

2 responsibility based upon conduct after he came into

3 custody.  Thank you, Your Honor.

4       THE COURT:  Thank you.  Mr. Dewald, do you wish

5 to address that?

6       MR. DEWALD: Absolutely.  Mr. Ray, knowingly

7 avoided apprehension for 14 months in this case and under

8 the circumstances it is appropriate that he be denied

9 acceptance of responsibility.  Now, I am not going to

10 deny when he was caught and he was brought before the

11 magistrate and before the Court, he did timely plead

12 guilty and he does deserve some measure of recognition in

13 his sentence today, I believe.  However, when law

14 enforcement attempted to arrest him following the

15 issuance of the federal indictment, he evaded them, and I

16 believe he is fortunate that he didn't get an enhancement

17 for obstruction along with denial for acceptance of

18 responsibility on that point.

19     Another argument that I have heard for him to obtain

20 acceptance of responsibility credit is that there was

21 really no reason for him to plead, and I disagree with

22 that.  By pleading guilty to this charge, he avoided a

23 trial which would have -- he has two prior 851

24 enhanceable felony drug convictions.  So had he gone to

25 trial, he would have faced a mandatory life sentence.

1    He avoided that by pleading guilty.  He was not

2  forced to or it was not part of the plea discussions to

3  enhance him with a single one of those felony priors

4  which would have made his mandatory minimum of 20 years.

5  As he stands here today he face as statutory minimum of

6  ten years.  He has derived benefit from coming in and in

7  a timely manner and pleading guilty following having

8  absconded for 14 months.

9    As I referenced earlier, the government does believe

10  that some kind of recognition should be shown to Mr. Ray

11  for coming in and pleading guilty, and the government

12  would ask that at the end of the day if acceptance of

13  responsibility is not credited to him that he receive a

14  sentence at the low end of whatever of the applicable

15  guidelines.  I think that would be fair, but under the

16  circumstances, in the papers Defense Counsel argues that

17  his being a fugitive is irrelevant, and his being unaware

18  of the federal indictment is not relevant, but the

19  probation office in their addendum stated that he did

20  admit that he fled and he did admit that he knew he was

21  wanted by law enforcement at the time.  Now, whether it

22  was federal indictment versus a state indictment, I don't

23  think is relevant or germane to this.

24    As I mentioned earlier Mr. Ray is lucky that he was

25  not enhanced for obstruction because under 3C1.1

1  obstruction or impeding administration of justice, one of

2  the listed grounds for -- for receiving an obstruction is

3  escaping or attempting to escape in custody before trial

4  or in sentencing.  That is what happened here.  It is

5  evading situation where he knew he was wanted by law

6  enforcement.

7      Another argument could be that he might have placed

8  the pursuing law enforcement officers in danger.  Again,

9  that would result in another two-point enhancement.  None

10 of that is added here.  I think is appropriate and well

11 stated by the probation office that acceptance of

12 responsibility is not appropriate in this case.

13         THE COURT: Mr. Pace, anything else?

14         MR. PACE: Just briefly, Your Honor, a

15 prerequisite to escape or attempt to escape is that you

16 be in custody which never occurred in this particular

17 circumstance.  Secondarily, I think the fact that there

18 was the negotiations that there is no 851 is not germane

19 or relevant whether or not he accepted responsibility.

20         THE COURT: I think he was in connection with

21 respect to the issue that he still derived some benefit

22 received some benefit from pleading guilty.  That is a

23 close call.  I have looked at it, and I don't think and I

24 don't think, Mr. Dewald, that Mr. Pace's argument is not

25 relevant.  It is one of the factors you have to

1  consider.  There are a lot of issues here that he did

2  leave.  He did evade.  It is not clear.  It looks from

3  the record that he didn't evade from this particular

4  charge, this particular offense because the indictment

5  was sealed.  He may not have known.  There was a warrant

6  out from another Smith County case, so it is likely that

7  is why he was leaving.  So I don't know that the

8  obstruction would apply in this case which is likely why

9  it didn't get in there.  You can't show the required

10  knowledge.  But given that and that being said once he

11  was apprehended, he then did what he needed to do,

12  admitted responsibility, and debriefed and stated what he

13  needed to state.  I think when you state on balance I

14  sustain that objection and I will grant you, Mr. Ray,

15  your two levels. I am going grant two levels for

16  acceptance of responsibility and so that will be

17  sustained on that level and reduce the level down to 32.

18  The next objection?

19          MR. PACE:  The last one, Your Honor, is

20  regarding a minor role for his participation.  It is

21  objection number 6.  Mr. Ray feels that he is clearly

22  less culpable than Mr. Tony or Mr. Williams who was

23  involved in the conspiracy for a short period of time and

24  not as serious as them based upon where we are in

25  everything he feels as compared to them the only people

1  who knew besides Ms. Bird that he was a minor participant

2  and deserves a minor role.

3          THE COURT: Thank you.  Mr. Dewald, anything on

4  that?

5          MR. DEWALD:  The Defendant bears the burden of

6  proving that he was at best a peripheral and

7  substantially list substantially less culpable than other

8  actors in this conspiracy.  That has not been shown, and

9  I don't think he would be capable of showing that.  He

10 knowingly and willfully, willingly participated in the

11 distribution and does not deserve a minor role.

12         THE COURT: Anything else on that, Mr. Pace?

13         MR. PACE: No, sir.

14         THE COURT: I agree with Mr. Dewald on that,

15 Mr. Pace.  You certainly were less culpable than

16 Mr. Tony. You were actually pretty comparable to

17 Mr. Williams.  You weren't in quite -- there were twelve

18 total.  You are at the top.  Your guidelines are the

19 second or third highest after Mr. Tony and Mr. Williams,

20 so I don't think that you are entitled to a minor role

21 adjustment.  That objection is overruled.  That concludes

22 your objections that we need to address.

23         MR. PACE: Yes, sir.

24         THE COURT: Based upon the rulings that I have

25 made here, we are at offense level 32, criminal history

1  category -- we are still at criminal history category VI,

2  and a guideline range at that level and criminal history

3  is 210 to 262 months.  Mr. Dewald, do you agree with

4  that?

5          MR. DEWALD:  Yes, Your Honor.

6          THE COURT: Mr. Pace, can you check that and make

7  sure you agree with that?

8          MR. PACE:  Yes, sir.

9          THE COURT:  And then we have the government's

10  motion for downward departure, and Mr. Dewald do you wish

11  to address that?

12          MR. DEWALD:  Actually, I think the motion which

13  is submitted under seal would be appropriate to go into

14  the contents here, but I think the motion sufficiently

15  sets forth the factual basis.  I think it sets forth that

16  Mr. Ray did indeed try in other ways to assist the

17  government, but the government believes that the

18  two-point recommendation accurately reflects the quality

19  and value of the assistance he gave.

20          THE COURT:  Thank you.  And I will grant the

21  motion for downward departure to the 5K based upon what

22  is stated in the motion.  It is appropriate, and so I

23  will grant that motion.  Mr. Pace, do you wish to address

24  that motion?

25          MR. PACE: No, Your Honor, just to reserve the

1    fact that the parts that the government did not find to

2    be two levels of substantial assistance, I am asking that

3    that be considered by you for the varying sentencing

4    memorandum.

5         THE COURT: I will grant that.  The government's

6    5K motion I will depart down two levels as the government

7    has recommended.  I believe that is appropriate under the

8    facts as presented in the motion, so that takes it down

9    to level 30 and a criminal history category of VI and the

10   guideline range will be 160 to 210 months; is that

11   correct?

12        MR. PACE: Yes, sir.

13        THE COURT: I will hear from you, Mr. Pace, on

14   your motion for variance.

15        MR. PACE: Your Honor, the first part of the

16   motion which is a combination of variance and downward

17   departure motion spoke to the acceptance of

18   responsibility which the Court has dealt with

19   favorably.  The second part had to do with the family

20   circumstances.  And the third part had to do with the

21   nature and characteristics of Mr. Ray.  All of the people

22   left in the courtroom which are 24, 16 are family members

23   and -- 17 are family members and 7 are friends.

24        Mr. Ray's father is here and would like to address

25   the Court on behalf of all of those people if you want to

1  do that now or at another time.

2          THE COURT:  Now is a good time; sure.

3          MR. PACE:  His name is Henry Ray.

4          THE COURT: Mr. Ray.

5          THE WITNESS HENRY RAY: Good evening, Your
6  Honor.  I am grateful.  I don't even know you, but I am
7  grateful to you for giving me the opportunity to give me
8  the opportunity to speak on behalf of my son Kendrix
9  Ray.

10      Kendrix grew up under my authority, a typical
11  child.  I worked for a company right at 40 years.  I done
12  that rotate shift and he missed some parent objection in
13  life because I am working nights and he is going to
14  school in the daytime, so there has been some times that
15  he has missed something, but I turn to that that he has
16  been a typical nice kid.

17      We bought him trucks and stuff and he worked, and
18  everybody that he worked for really, really liked him.
19  He was really on time.  He worked and everything and all
20  of that, and he came in and he was always a wise guy.
21  You would give him an old radio that was broke and he
22  would take it and put it back together.  He learned how
23  to weld.  He learned how to drive a truck.  He learned
24  how to run bulldozers and track hoes.  He is a typical
25  wise man and just somewhere another down the line, I

1   think by me working nights that there was a goal of what

2   we are stepping stone, a goal stepping stone that was

3   always in his path at some time.  And I guess by the road

4   being so clear that he somewhere another down in the

5   lifetime tried to say I am going to try this and by him

6   trying this got him in this situation that he is in.

7           To you and to the Court, I am begging you for

8   sympathy for him at his age.  He has two grateful young

9   boys that's growing up that is really, really grateful in

10  education, and one of them is not really grateful in

11  education, but he can do whatever you would ask him to

12  do.  And I am speaking here on behalf of his grandmother

13  aunt, sister, brother, cousin, and so many other friends

14  that is here to represent him that as far as my point of

15  view, I have tried to be really a great father to him.

16  But like I say, maybe that little slack that I wasn't

17  there because I was working nights because we did this

18  rotate shift, but overall, he is a typical child, and I

19  would like you to have mercy on his life, mercy on his

20  kids, and mercy on his family and me.  Thank you.

21          THE COURT: Thank you.

22          THE WITNESS HENRY RAY:  Thank you, sir.

23          THE COURT: Mr. Ray, you can come back up to the

24  podium.  Mr. Pace?

25          MR. PACE: Yes, sir, I would like for you to

1  consider a nonguidelines sentence in this case for those

2  reasons and also because I believe in this particular

3  circumstance the guideline range is pretty harsh.  I am

4  not saying that it is not something that has been derived

5  at.  I am just saying there might have been some issues

6  there you have overruled the objections, but there might

7  be questions about how serious he was involved or related

8  to the other people.

9      I have given you the sentences of the others, where

10 we are in the guidelines right now is going to put him

11 pretty much up there at the top.  I think that part of

12 the problem that we are here is the prior criminal

13 history.  I understand the ruling that you made, but I

14 also understand that consolidation order and issues that

15 we brought forward in the objections are something that

16 you are also allowed to consider under 4A1.3(b) which is

17 whether or not this criminal history category is

18 overstated.

19     We are at a 15, 13, 14, 15, or 6, a 12 would be a 5,

20 and I don't think that would be unreasonable in this case

21 in light of the facts that consolidation orders, the

22 kinds of offenses that were committed.

23     Of course, I would like for you to consider no

24 greater than necessary situation, and I would also like

25 you to consider the fact that the guidelines were not

1  established on the drug things by any kind of empirical

2  approach like on bank robberies and things like that.

3      I also asked for totality of the circumstances.

4  Also, subsequent to filing that motion in January, I

5  filed another one which came to light regarding what

6  Mr. Ray has done to better himself and this the

7  supplemental motion which was filed a couple weeks ago.

8  I hope it got that to you in time for you to be able to

9  read it.  I think when you look at those documents,

10 everything comes before you and says judge, I am not

11 going to do this any more, and I promise I will do

12 better.  This is a particular situation not only did

13 Mr. Ray tell you that in his letters, but he took upon

14 himself to perform what I think is pretty extraordinary

15 sense to show you that not only is he done with criminal

16 activity, he has intention and belief and ideal to better

17 himself to do the work that it takes to better himself

18 and to perform more correctly.

19      I have put out in the page 3 and 4 of that

20 supplemental sentencing memorandum the twelve factors

21 under 3553(a) which the Court could use all or any to

22 fashion a nonguidelines sentence, and that is all I have

23 on the motion.

24      Just from me personally, you can tell from the

25 pre-sentence report, I have known Mr. Ray for ten years.

1 Most of those times has been a professional relationship,

2 and most of those times have been because of his criminal

3 activity.  He has been in jail in Tyler for -- since --

4 almost two years, and I think he got to Seagoville in

5 February of 09, and I have been to see him on a regular

6 basis.  By the fact that I had known him for ten years, I

7 pretty much thought that I knew what I was going to see

8 and what I was going to expect and it was going to be the

9 same old thing again.

10     Personally, I can tell you, this is not the

11 individual that I knew.  He does not have the same

12 attitude.  He does not have the same outlook on life.  He

13 does not have the same desire to avoid culpability or

14 consequences or acceptance of responsibility.  He is

15 different in that regard.  I see that on an emotional

16 level.

17     I am so grateful that we have an opportunity now

18 because of what has happened with the law lately for an

19 experienced federal judge who has been around for a long,

20 long time and seen a whole lot of stuff, to not be told

21 what to do by some commission in Washington any more, for

22 somebody who is able to fashion an appropriate sentence

23 for the facts of the case, for the public, for the

24 government, and for the Defendant considering all of the

25 facts and circumstances.

1    I think it is pretty clear that Mr. Ray and I have

2  worked really, really hard on this case, and that we have

3  pretty much done everything that we thought we could do

4  to bring you everything that we could to show you that he

5  is different, and for whatever that is worth from my

6  point of view, it is not necessary for a plea for mercy.

7  It is just to tell you that I personally have seen a

8  change in this man and I would like for you to see it

9  also.

10         THE COURT: Thank you.  I appreciate that.

11  Mr. Ray, you are entitled to speak in your behalf.  Is

12  there anything you would like to state, and I have read

13  the letter that you have sent.

14         THE DEFENDANT RAY:  First off, I want to

15  apologize to my family and closest friends for

16  disappointing them after telling them I wasn't going to

17  get back in trouble again.  Most of all, I want to say I

18  am sorry to my parents for the embarrassment I keep

19  putting them through.

20         Your Honor, I accept full responsibility of my

21  actions, and I know I have to pay the consequences, I

22  just ask that I don't be too long that it becomes too

23  late for my sons and I.

24         I got into trouble all in my twenties, and I never

25  sat back to see my actions really hurt.  I have been

1  locked up over 22 months now after being locked up

2  several months, I told myself, it is time to change my

3  life around and do something different.  With the help of

4  my family, I worked hard several months to achieve my

5  high school diploma, and I am proud to say that I passed

6  the test.  I accomplished something big in my life.  My

7  next step is to educate myself on business maybe one day

8  I could own my own trucking company since I do have that

9  desire to drive trucks and do that type stuff.

10     I ask the Court to be lenient on me today so I can

11  show my boys the way I did things was the wrong way.  I

12  know I have been in trouble a lot, and I haven't showed

13  them a good example.  My parents they have worked hard

14  all their lives and I am ashamed that none of that rubbed

15  off on me.

16     I want to show my boys you have to work hard.  You

17  have to work hard to get the things you want in life and

18  not to take care it for granted as I did and deal drugs.

19  Your Honor, I just -- I ask you to please give me a

20  mandatory minimum today, so that I could be a father to

21  my boys and get out in time like my father was to me.

22     You know, sometimes I sit back and I have told myself

23  several times, I have never met a man that has gave me

24  much trouble as myself and now that I sit back I really

25  see I had a chance to look at the man in the mirror and

1 say he has changed a lot from his past.  I know that my

2 parents didn't plan for our family to go through this,

3 and I have promised them that -- I promised them I won't

4 take them back down this road again, out of all of the

5 trouble I have put them through.

6      I am not really good at speaking out, but I am

7 trying.  Your Honor, I just ask that you please give me

8 the mandatory minimum.  Why am I asking you for the

9 mandatory minimum?  I am 34 years old.  I am done living

10 this lifestyle.  I have made a real bad decision, but I

11 am committed to rebuilding my life and with the help of

12 my family, I know I can do it.  I ask that you just, you

13 know, you have a lot of people come in your courtroom and

14 tell you what they are not going to do and what they have

15 done.  I ask you not look at me as a worthless drug

16 dealer that has no future.  I have always had a future.

17 I always wanted to do stuff on my own.  I work good with

18 people, but it is not that I work good at someone telling

19 me what to do is why I always tried to do my own as

20 getting my CDL and driving my truck and stuff.

21      I still -- I just ask that you give me the mandatory

22 minimum of this case, and give me a chance, give me

23 another chance to be with my boys, and I want to end this

24 by telling my family thank you.  Thank you for your

25 support.

1          THE COURT: Thank you, Mr. Ray.  Mr. Dewald,

2    anything from the government?

3          MR. DEWALD:  With respect to the defense's

4    motions for downward departure and variances, it contains

5    many different points that the Court will consider all of

6    which is acceptable for this Court to consider, none of

7    which the government objects to their consideration.

8    However, the government does not believe that any of

9    those points merit a downward variance from the

10   applicable guidelines especially in light of this Court's

11   granting of the acceptance of responsibility.

12        You know, Mr. Ray is facing a lot of time because of

13   his criminal history which is considerable, and because

14   of the fact that he absconded for 14 months.  This Court

15   should not lose sight of the criminal history and that he

16   actively avoided apprehension in this matter.  I think

17   this Court has already rewarded Mr. Ray for accepting

18   responsibility.  The government has already rewarded

19   Mr. Ray for coming in and assisting in the prosecution of

20   others, and the government believes that under the

21   circumstances a guidelines sentence would be appropriate.

22          THE COURT:  Thank you.  Mr. Pace, anything

23   else?

24          MR. PACE: No, sir.

25          THE COURT: Well, Mr. Ray, I certainly appreciate

1   the efforts that you have made in getting this diploma

2   and continuing Mr. Pace I appreciate your advocacy and

3   appreciate where you are coming from and that is one

4   reason I granted the acceptance of responsibility.  It

5   appears there was an effort to make a change.

6   Nonetheless, Mr. Ray, I can't overlook criminal history.

7   Mr. Dewald pointed that out, so has your lawyer.  More

8   than that the guidelines are high because of your

9   involvement in drug activity.  The amounts of drugs that

10  you were involved in and you have been doing this now for

11  a long time.

12       You had a conviction back in the 90s, and then you

13  got out from prison in late 98 early 99, and by 01 you

14  are arrested on another drug charge, and then you were

15  paroled out on that one in 05.  Late 05 and early 06 is

16  when you got involved in this case.  You kept getting

17  bigger and bigger and bigger is what you kept doing as

18  you served sentences, when you got out you continued in

19  drug dealing and each time you got more and more into

20  drug dealing and that is what has got you in trouble now

21  and you dealt kilogram quantities of cocaine in a

22  relatively short period of time.  Because you started in

23  late 05 and early 06 and stopped in 06, so a little over

24  a year and a half you were dealing in significant

25  quantities of cocaine.

1      Your criminal history, because of the sentences that
2   were convictions in 05 weren't treated as consolidated,
3   but they were separate offenses.  They were burglary of
4   motor vehicle, a gun count, and a drug case.  All of them
5   are serious felonies and they are committed at different
6   occasions.
7      You kept going from one crime to another, Mr. Ray.
8   When you paroled out on that one, you committed another
9   and got paroled out on that and got in another.  I don't
10  think that is a basis for granting a downward variance I
11  agree with Mr. Dewald and looking at all the factors
12  Mr. Pace and Mr. Ray, and Mr. Pace I think a sentence
13  within the guidelines range and considering the 3553(a)
14  factors, I think a sentence within the guidelines is a
15  reasonable sentence in this case.  And as I stated to
16  your attorney, Mr. Ray, part of the reasons I granted the
17  acceptance is it appears that you are at least trying to
18  move your life in that direction.
19     You have been telling people before and you have not
20  and you have always done it again, continued one time
21  after another and another and continued to get bigger.
22  Hopefully, this time it will take and you are serious
23  about continuing your education and doing something
24  positive with this time.  But I don't believe a sentence
25  outside the guidelines is appropriate.

1    You were totally involved.  You are right behind

2  Williams, and certainly below Mr. Tony, but they were

3  granted significant downward departures because of their

4  assistance.

5    The judgment of the Court is that we have a guideline

6  range of 168 to 210 months.  It will be the judgment of

7  the Court that Mr. Ray considering a criminal history and

8  all the circumstances that I stated that you be sentenced

9  to the custody of the U.S. Bureau of Prisons for a term

10 of 180 months.  That will be followed by a five-year term

11 of supervised release.

12    I will not order a fine in this case.  Restitution

13 doesn't apply.  There is a $100 mandatory special

14 assessment that has to be imposed in this case that will

15 be imposed in your case.  Following your release from

16 custody, you will be on supervised release for five

17 years.  You have been on supervised release, parole, and

18 had violations before.  You had to follow certain

19 conditions, reporting to a probation officer.  They will

20 explain the conditions to you and go over them with you.

21 Among the conditions will be that you not commit any

22 other violations of law whether it be federal, state, or

23 local law that you not to possess or use any controlled

24 substance.  You are to provide DNA as directed by the

25 probation officer, and not possess a firearm, ammunition,

1   destructive device, or any other dangerous weapon.  You

2   must submit to one drug test after release from custody

3   and at least two drug tests as directed by your probation

4   officer.  You must stay in the program whether it shall

5   inpatient or outpatient as approved by your probation

6   officer for the treatment of narcotic, drug, or alcohol

7   dependency including testing to determine whether or not

8   you are using or abusing any type of substance.

9       You will be ordered to not use any alcohol, drug, or

10  any type intoxicant during the term of supervised

11  release, and while you are going through this treatment

12  contribute to the cost of services by making monthly

13  payment of at least $10 and participate in mental health

14  treatment services as directed by your probation officer

15  until you are successfully discharged.  This will include

16  taking any medications that any doctor may prescribe.

17  You will also be ordered to contributed to the cost of

18  the services by making monthly payment of at least $10

19  per month.  Lastly following your release from custody

20  report in person to the probation office in the district

21  where you are released and report within 72 hours of

22  release to the probation office in the district, and they

23  will go over the conditions of supervised release and get

24  you on supervised release.

25      Also be mindful of the fact as part of your 5K,

1  there is an on going attempt so you may see a further

2  reduction, Mr. Ray, in your case, depending upon what

3  apparently your involvement in the assistance you are

4  able to give to the government.  There may be a Rule 35

5  motion forthcoming that could result in a further

6  reduction in your sentence.  That remains to be seen.  We

7  will see how that plays out.

8      I will accept the plea agreement that the parties

9  entered into in this case.  As I explained to you back in

10 May of 09, Mr. Ray when you entered your plea of guilty

11 as part of your plea agreement with the government you

12 waive your right of appeal in this case to a large

13 extent.  To the extent that you have a right of appeal

14 that applies here that you wish to exercise, you can

15 speak with Mr. Pace about that.  If you don't have the

16 means to hire an attorney to represent you on appeal, you

17 will be furnished with an attorney to represent you at no

18 cost to you.  The transcript which was May 6th of 09

19 where I entered your plea guilty as well as a transcript

20 of the today's hearing will be provided to you at no cost

21 and you can speak with Mr. Pace about how that applies

22 here.  Mr. Pace, anything else we need to address here?

23         MR. PACE: Just a couple of housekeeping matters.

24 Could you put in the judgment the recommendation for the

25 drug treatment class pursuant to paragraph 99 of the

1  pre-sentence report?

2        THE COURT: I will be glad to do that.  I am

3  sure Mr. Pace has explained to you, Mr. Ray, that is

4  not binding upon the Bureau of Prisons.  I will be glad

5  to make a recommendation, and they will make the ultimate

6  recommendation if you are a candidate.

7        MR. PACE: Yes, sir, and Mr. Ray and I have gone

8  through what his likely classification would be which

9  would be medium and he would like the Court to make a

10 recommendation of El Reno if the Bureau of Prisons would

11 like to go along with that.

12       THE COURT: My practice is not to make a

13 recommendation, Mr. Ray.  It is not binding on them.

14 They are going to make their determination where they

15 think you need to be, and so I will stay out of that

16 decision making.

17       MR. PACE: He came into federal custody I think

18 his arrest on this indictment was January 29, but he

19 didn't actually get to us until February.  Could the

20 judgment reflect January 29th as the start date?

21       THE COURT:  Under the federal law of the Bureau

22 of Prisons, they decides the back time and he can't get

23 credit for any back time here that is credited to another

24 state sentence or to another sentence anywhere.  I am not

25 sure how that is going to work.

1          MR. PACE: There was not any other sentence other

2    than this one.

3          THE COURT: When he was arrested in 09 he had

4    discharged sentences?

5          MR. PACE: Yes, sir.

6          THE COURT: If that is the case, then likely he

7    will get credit.

8          MR. PACE:  And Mr. Ray asked me to specifically

9    ask if the Court would grant his motion to have his

10   diploma made part of the pre-sentence report so that it

11   will be considered in his classification.

12         THE COURT: I will certainly will be glad to do

13   that.  Anything else?

14         MR. PACE: No.

15         THE COURT: Mr. Dewald, anything further from the

16   government?

17         MR. DEWALD:  No, Your Honor.

18         THE COURT: Mr. Ray, you are remanded to the

19   custody of the United States Marshal to serve your

20   sentence.  Good luck to you.  The Court is adjourned.

21         THE COURT SECURITY OFFICER: All rise.

22   (THE HEARING WAS ADJOURNED AND THE COURT WAS IN RECESS.)

23   I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
24   I further certify that the transcript fees format comply
     with those prescribed by the court and the Judicial
25   Conference of the United States.

1           S/Charyse C. Crawford            01-03-2012
  Signature_____ Date:_____
2         Charyse C. Crawford, CSR, RPR
          United States Court Reporter
3         Northern District of Texas - Dallas Division
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25